```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF GEORGIA
                    ATHENS DIVISION
```

FARRELL DEMITA JOHNSON,          *

    Plaintiff,                   *

vs.                              *          CASE NO. 3:20-CV-64 (CDL)

DEPUTY CAROL GIBSON, *et al.*,   *

    Defendants.                  *

_____

## O R D E R

Farrell Demita Johnson alleges that, while he was driving his truck in a lawful manner on a public highway, Madison County deputy sheriff Carol Gibson pulled him over and briefly detained him for no legitimate reason. Gibson issued no citation to Johnson and detained him only long enough to run a check on his license. Believing his rights were violated, Johnson decided to make a federal case out of it and filed this action. He alleges that the stop violated the Fourth Amendment to the U.S. Constitution. He sues Gibson in her individual capacity for stopping him without any reasonable suspicion that he was in violation of the law. He also asserts claims against Gibson's supervisors for their alleged role in the stop. Making sure that anyone who was tangentially related to the stop is held to account, Johnson includes the Madison County Sheriff, the Madison County Sheriff's Office, and the Madison County Board of

Commissioners as Defendants in his lawsuit.  Defendants filed a motion to dismiss all the claims against them.  For the reasons set forth below, the Court denies the motion to dismiss (ECF No. 3) as to the claim against Gibson in her individual capacity but grants the motion as to the claims against all other Defendants.

## MOTION TO DISMISS STANDARD

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims. *Id.* at 556. But "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

## FACTUAL ALLEGATIONS

Johnson alleges the following facts in his Complaint.  The Court must accept these facts as true for purposes of the

pending motion.   On a sunny morning in May 2020, Farrell Demita Johnson was driving his 1996 Ford pickup truck west on Highway 72 in Madison County.   His truck's lights were off.   Madison County deputy sheriff Carol Gibson was driving her patrol car east on Highway 72.   When she saw Johnson, she turned around and initiated a traffic stop.   Gibson told Johnson that she stopped him because of a blown taillight, and she asked Johnson for his driver's license.   Johnson gave Gibson his driver's license and explained that Gibson could not have seen whether his taillight was out or not because his lights were off.   Gibson went to her patrol vehicle with Johnson's driver's license, so Johnson could not leave the scene.   Gibson returned Johnson's driver's license and said he should fix the taillight.   She did not issue a citation.

When Johnson reached his destination, he confirmed that both taillights were operational.   He called the Madison County Sheriff's office and told a field sergeant what happened. Johnson again explained that his truck's lights do not come on automatically and that the lights were off when Gibson pulled him over, so it was impossible for Gibson to tell that a taillight was out.   And, Johnson explained that his taillights were both in working condition.   The field sergeant said that he would review Gibson's body camera footage and contact Johnson if he found a violation.   The field sergeant did not call Johnson,

so Johnson filed a citizen grievance against Gibson. The grievance was assigned to Major Jeffrey Vaughn. When Johnson contacted Vaughn about the grievance, Vaughn said that he watched the video and that Gibson was professional and not rude. Johnson explained that his grievance was not that Gibson was rude but that the "traffic stop was illegal." Compl. Attach. 1, Facts of Case 2, ECF No. 1-2. Vaughn said that he told Gibson "how to do traffic stops like that in the future and case closed." *Id.*

DISCUSSION

Johnson, who is proceeding pro se, brings his claims pursuant to 42 U.S.C. § 1983 against Gibson, the field sergeant (identified as John or Jane Doe), Vaughn, Madison County Sheriff's Department training supervisor Lieutenant Jason Luke, Madison County Sheriff Michael Moore, the Madison County Sheriff's Office, and the Madison County Board of Commissioners. The Court addresses each claim in turn.

## I.   Claim Against Deputy Gibson

Johnson claims that Gibson violated his rights under the Fourth Amendment. Gibson argues that she is entitled to qualified immunity, which protects governmental officials acting in their discretionary authority from liability under § 1983 unless the plaintiff establishes that the officials violated his clearly established rights. *Jackson v. Sauls*, 206 F.3d 1156,

4

1164 (11th Cir. 2000) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Here, there is no dispute that Gibson was acting in her discretionary authority when she stopped Johnson. Thus, Johnson must establish that the stop violated his clearly established Fourth Amendment rights.

It has long been clearly established that an officer may not make an investigatory traffic stop unless she has a "reasonable, articulable suspicion" to justify the stop. *Illinois v. Wardlow*, 528 U.S. 119, 123-24 (2000). The officer must have a "reasonable, articulable suspicion that criminal activity is afoot." *Id.* And when the officer asserts qualified immunity, the issue is whether the officer had arguable reasonable suspicion to support the investigatory stop. *Jackson*, 206 F.3d at 1166. Gibson argues that the Court should only consider the reason she gave for the stop: one blown taillight.[1] If the Court ignored Jackson's factual allegations

---

[1] In support of this argument, Gibson cites *Whren v. United States*, 517 U.S. 806 (1996), where the Supreme Court emphasized that in determining whether a traffic stop violates the Fourth Amendment, the key question is whether a reasonable officer would have made the stop for the reasons given; a decision to stop a vehicle is reasonable if the officer has probable cause to believe that a traffic violation has occurred, and the officer's subjective motivations play no role in this analysis. Significantly, there was no fact dispute in *Whren* that the officer had probable cause to believe that the driver violated several provisions of the applicable traffic code. *Id.* at 810. Gibson also argues that Johnson only alleges that she made a reasonable factual mistake when she concluded that one of the taillights was blown. But he does not. Johnson alleges that his lights were both working but off and that that Gibson stopped him for one blown taillight anyway.

and considered only Gibson's explanation of what happened, then Gibson would be entitled to qualified immunity.   But at this stage in the litigation, the Court is required to take Johnson's allegations as true and draw all reasonable inferences in his favor.   *Iqbal*, 556 U.S. at 678.   In his Complaint, Johnson alleges that his taillights were fully operational when Gibson stopped him.   He also alleges that because his truck's lights were off and not illuminated, it would have been impossible for Gibson to conclude that one of the taillights was blown.   Under this version of the facts, Gibson had no justifiable reason for making the stop.   Every reasonable officer would have known that stopping a motorist under these circumstances clearly violates the Fourth Amendment.   Accordingly, Gibson is not entitled to qualified immunity at this time.   *See Jackson*, 206 F.3d at 1166 (affirming denial of summary judgment on qualified immunity grounds because the plaintiffs' version of the facts showed no arguable reasonable suspicion for the investigatory stop). Gibson's motion to dismiss is therefore denied.

## II.  Claims Against Supervisors

In addition to his claims against Gibson, Johnson asserts claims against the unidentified field sergeant and Vaughn, along with claims against training supervisor Jason Luke and Madison County Sheriff Michael Moore.   Supervisory officials like these "are not liable under § 1983 for the unconstitutional acts of

their subordinates on the basis of *respondeat superior* or vicarious liability." *Keith v. DeKalb Cty.*, 749 F.3d 1034, 1047 (11th Cir. 2014) (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003), *abrogated in part on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that district courts may consider either prong of the qualified immunity analysis first) and *Randall v. Scott*, 610 F.3d 701, 703 (11th Cir. 2010) (finding no heightened pleading requirement)). "Instead, to hold a supervisor liable a plaintiff must show that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation." *Id.* at 1047-48. Here, Johnson does not allege that Vaughn, Luke, Moore, or the unidentified sergeant directly participated in Gibson's traffic stop. He only alleges that Vaughn and the unidentified sergeant did not adequately investigate his grievance, and he alleges no facts regarding Luke or Scott's acts or omissions. Johnson does appear to suggest that these supervisory officials failed to train Gibson, and he summarily contends that the Madison County Sheriff had a "custom of making traffic stops by any means necessary." Pl.'s Resp. to Defs.' Mot. to Dismiss 4, ECF No. 4.

If a supervisor's policy or custom results in "deliberate indifference to constitutional rights or when facts support an

inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so," then the supervisor may be held liable for his subordinate's unconstitutional acts under § 1983. *Keith*, 789 F.3d at 1048 (quoting *Cottone*, 326 F.3d at 1360). Here, Johnson does not allege that any of the supervisors directed Gibson to stop him without probable cause. He also does not allege any facts to suggest that any of the supervisors knew that Gibson would act unlawfully but failed to stop her from doing so. And, he does not allege any facts to suggest that the Madison County Sheriff had a custom or policy of making traffic stops without probable cause or reasonable suspicion. Thus, Johnson did not allege facts to establish supervisor liability based on an unlawful policy or custom.

The Court notes that in limited circumstances, a failure to train employees may also give rise to supervisory liability under § 1983. *Keith*, 749 F.3d at 1052. A "supervisor can be held liable for failing to train his or her employees 'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [deputies] come into contact.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). "Thus, a plaintiff alleging a constitutional violation premised on a failure to train must demonstrate that the supervisor had 'actual or constructive notice that a

particular omission in their training program causes [his or her] employees to violate citizens' constitutional rights,' and that armed with that knowledge the supervisor chose to retain that training program." *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). Here, Johnson does not allege that there was a pattern of similar constitutional violations by untrained employees. Therefore, the present Complaint does not adequately allege a basis for supervisory liability based on a failure to train. Accordingly, Johnson's claims against the unidentified sergeant, Vaughn, Luke, and Moore are dismissed.[2]

## III. Claims Against "Madison County Sheriff's Office" and "Madison County Board of Commissioners"

In addition to his claims against Gibson and the supervisors, Johnson attempts to assert claims against "Madison County Sheriff's Office" and "Madison County Board of Commissioners." The capacity to sue or be sued is determined "by the law of the state where the court is located." Fed. R. Civ. P. 17(b). Georgia "recognizes only three classes as legal

---

[2] Defendants do not clearly address whether Johnson asserted official capacity claims against Sheriff Moore. They do, however, assert that Johnson cannot establish a "*Monell* claim" because he did not allege that a policy or custom of the Sheriff caused a constitutional violation. Just as Johnson's failure to allege that a policy or custom of the Sheriff was a moving force behind any constitutional violation forecloses his supervisory liability claims against Moore, it also forecloses any official capacity claims against him. In addition, although Defendants did not clearly raise the issue, the Sheriff in his official capacity is likely entitled to Eleventh Amendment immunity as an arm of the State. *See Manders v. Lee*, 338 F.3d 1304, 1308, 1328 (11th Cir. 2003) (en banc).

entities, namely: (1) natural persons; (2) an artificial person (a corporation); and (3) such quasi-artificial persons as the law recognizes as being capable to sue." *Lawal v. Fowler*, 196 F. App'x 765, 768 (11th Cir. 2006) (per curiam) (quoting *Ga. Insurers Insolvency Pool v. Elbert Cty.*, 368 S.E.2d 500, 502 (Ga. 1988)). Sheriff's departments "are not usually considered legal entities subject to suit." *Id.* (quoting *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992)). Rather, the proper party is the Sheriff, and the claims against the Sheriff have been dismissed. Accordingly, Johnson's claim against the "Madison County Sheriff's Office" is dismissed.

Johnson's claim against the "Madison County Board of Commissioners" is likewise dismissed because although the board is the governing body of Madison County, the board of commissioners is not a legal entity capable of being sued. And, even if Johnson's claims were construed as claims against Madison County itself, Johnson did not make any factual allegations against the County or the board of commissioners. Instead, Johnson's complaint focuses on acts of a deputy who was employed by the Madison County Sheriff. In Georgia, a county is a "separate entity independent" of the county sheriff. *Manders v. Lee*, 338 F.3d 1304, 1311 (11th Cir. 2003) (en banc). For these reasons, Johnson's complaint fails to state a claim

against Madison County, and the claim against the Madison County Board of Commissioners is dismissed.

                                CONCLUSION

      As discussed above, the motion to dismiss (ECF No. 3) is granted as to all claims except Johnson's individual capacity § 1983 claim against Gibson.  That claim remains pending.

      IT IS SO ORDERED, this 16th day of December, 2020.

                              S/Clay D. Land
                              _____
                              CLAY D. LAND
                              U.S. DISTRICT COURT JUDGE
                              MIDDLE DISTRICT OF GEORGIA